STANLEY TILLMAN,

    Plaintiff,

v.

                    Case No. 16-CV-1335-PP

U.S. DEPT. OF HEALTH & HUMAN
SERVICES, U.S. GOVERNMENT, MICHAEL
WEINER, SUE CHEM, and OUTREACH
COMMUNITY HEALTH CENTER,

    Defendants.

---

**ORDER SCREENING COMPLAINT (DKT. NO. 1) , DENYING AS MOOT THE PLAINTIFF'S UNSIGNED MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), GRANTING THE PLAINTIFF'S SIGNED MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 5), AND DENYING AS MOOT PLAINTIFF'S THIRD MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 9)**

---

      On October 5, 201, plaintiff Stanley Tillman filed a complaint against the U.S. Dept. of Health & Human Services; the U.S. Government; Michael Weiner, M.D.; Sue Chem; and Outreach Community Health Center. Dkt. No. 1. In the complaint, the plaintiff listed his address as the Boonville Corrections Center, 1216 E. Morgan Rd., "Boonvie, Mo. 65233." Id. at 1. (The court notes that there is a Boonville Correctional Center at 1216 East Morgan Street in Boonville, MO, with that zip code. On December 15, 2016, the court received notice from the defendant that he had been released from custody, and that he was living on Evans Avenue in St. Louis, Missouri. Dkt. No. 9.)

1

I.   Facts

The complaint alleges that on April 24, 2013, the plaintiff went to the Community Outreach Center on Capitol Drive in Milwaukee to get his high blood pressure prescription refilled. Id. at 4. While he was there, defendant Dr. Michael Weiner (employed by Outreach) saw him, and wrote the plaintiff a prescription for a different medication. When the plaintiff went to the Outreach pharmacy to fill the prescription Dr. Weiner had given him, however, the pharmacy told him it no longer had that medication. The plaintiff returned to Dr. Weiner's office, telling defendant Sue Chem (the secretary) what had happened. Ms. Chem told the plaintiff to wait, then showed him into Dr. Weiner, who handed him a pill bottle which bore the name of the prescription, but not the name of the person to whom the medication had been prescribed. Id. Dr. Weiner instructed the plaintiff to take one of these pills a day until he was able to get the prescription Weiner had written him filled. Dr. Weiner gave the plaintiff no other instructions, and did not inform him of any side effects of the medication in the bottle. Id.

The plaintiff indicates that he took one pill a day, as Dr. Weiner had instructed him, and about a week later, while driving on the Illinois Turnpike through Rockford, Illinois, he lost consciousness and ran off the highway into a tree. Id. at 5. The plaintiff was seriously injured, his car was totaled, and the hospital where he was taken told him that the medication he'd been taking had caused his blood pressure to drop so low that he'd blacked out. Id. The hospital also told him that the medication he'd been taking was a heart medication with

2

serious side effects, including fatigue and unconsciousness. Id. The hospital told him that the dose Dr. Weiner (and, the plaintiff alleges, Sue Chem) had given him was sixteen times the recommended dosage. Id. The plaintiff alleges that these actions violated his Eighth and Fourteenth Amendment rights, as well as constituting malpractice and negligence. He claims that defendant the Department of Health and Human Services failed to properly supervise Dr. Weiner. Id. at 7. He indicates that he has exhausted his administrative remedies because he filed a complaint with the HHS (which investigated and closed the complaint). He seeks compensatory and punitive damages.

II.     Discussion

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is

3

more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The complaint must contain sufficient factual matter, that when accepted as true, states a claim "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual

4

allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Courts must hold *pro se* complaints, "however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers…" Erickson v. Pardus, 551 U.S. 89, 94 (2007). Thus, "[a] document filed *pro se* is 'to be liberally construed.'" Id.

A.   **Jurisdiction**

While the plaintiff does not say so, the court believes that he brings his constitutional claims (his Eighth Amendment claim that he was he was subjected to cruel and unusual punishment, and his Fourteenth Amendment due process claim) under 42 U.S.C. §1983, which prohibits a person acting under color of state law to deprive another person of his civil rights. To prevail on a claim under 42 U.S.C. §1983, a plaintiff must demonstrate that (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) the defendants acted under color of state law. See Potkay v. Ament, 34 F.Supp.3d 937, 946 (E.D. Wis. 2014) (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)).

The plaintiff alleges that Outreach, and its employees Dr. Weiner and Sue Chem, were entities or employees of the federal government. As an initial matter, the court notes that §1983 applies to individuals acting under color of

5

*state* law, not federal law. Even if the defendants had been acting under color of *federal* law, the plaintiff would not have stated a claim under §1983.

Further, the plaintiff is mistaken about the defendants being government entities or employees. According to http://www.ochc-milw.org/about-ochc, Outreach Community Health Centers is a private corporation formed in 1980, funded by the Robert Wood Johnson Foundation (a private charitable organization, see www.rwjf.org) and the Pew Memorial Trust (a sub-group of another independent, non-profit organization, see www.pewtrusts.org/en/about/history). Because Outreach is not part of the state government, the plaintiff cannot sue Outreach or its employees under §1983. Nor does the plaintiff have any cause of action against the United States government or the Department of Health and Human Services. The court will dismiss the U.S. Government and the Department of Health and Human Services as defendants.

Without his constitutional claims, the plaintiff's remaining claim is a potential medical malpractice and negligence claim under Wisconsin law. Federal courts have "diversity" jurisdiction over state-law claims, as long as the plaintiff and the defendants are from different states and the amount the plaintiff seeks in damages is more than $75,000. Title 28, United States Code, §1332. The court first must analyze whether there is "diversity" between the plaintiff on the one hand and Outreach, Dr. Weiner and Sue Chem on the other.

As noted, on the date he filed the complaint, the plaintiff was in custody in the state of Missouri. He since has been released, and now lives in Missouri. The complaint alleges that Outreach is located at 2300 North Capitol Drive in Milwaukee, Wisconsin. Dkt. No. 1 at 2. The plaintiff states that Dr. Weiner and Sue Chem live at this same address; this is unlikely. Dr. Weiner and Sue Chem *work* at Outreach, but that doesn't tell the court where they *live*, and it is *residency* that determines whether diversity jurisdiction exists.

If the individual defendants—Dr. Weiner and Sue Chem—lived in Wisconsin (or any state other than Missouri) on the day the plaintiff filed his complaint, then it appears that diversity jurisdiction would exist. Although the plaintiff lived in Wisconsin at the time of the events he describes in the complaint, he lived in Missouri at the time he filed this lawsuit. "It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570 (2004) (quoting Mollan v. Torrance, 9 Wheat. 537, 539m 6 L. Ed. 154 (1824).

Outreach is located in Wisconsin. Because Dr. Weiner and Sue Chem worked in Milwaukee, the court will assume at this early stage that they lived either in Wisconsin or in Illinois. Either way, they would be "diverse" to the plaintiff. The plaintiff asks for damages in the amount of $5,000,000, which is in excess of the statutory requirement for the exercise of diversity jurisdiction.

At this early stage, it appears that this court has diversity jurisdiction to hear the plaintiff's case against Dr. Weiner, Sue Chem and Outreach.

B.  **Causes of Action**

"Under Wisconsin law, medical malpractice has the same ingredients as garden-variety negligence claims: the plaintiff must prove that there was a breach of a duty owed that results in an injury." Gil v. Reed, 535 F.3d 551, 557 (7th Cir. 2008) (citing Paul v. Skemp, 242 Wis. 2d 507 (2001). The plaintiff has alleged that Dr. Weiner (who, as his doctor, would owe him a duty of care) gave him the bottle of pills that he believes resulted in his blacking out and crashing. He also alleges that Dr. Weiner should have told him of the possible serious side effects of whatever pills were in that bottle. Finally, he alleges that he suffer serious injury as a result of Dr. Weiner's breach of his duty to give the plaintiff the right medicine and to warn him of its side effects. The plaintiff has alleged sufficient facts to proceed on a malpractice/negligence claim against Dr. Weiner.

The plaintiff also alleges that Outreach, Dr. Weiner's employer, was vicariously liable for Dr. Weiner's alleged malpractice/negligence.

> A person is generally only liable for his or her own torts. Under certain circumstances, however, the law will impose vicarious liability on a person who did not commit the tortious conduct but nevertheless is deemed responsible by virtue of the close relationship between that person and the tortfeasor. The doctrine of *respondeat superior* ("let the master answer"), less frequently referred to as the master/servant rule, has been well settled in the law of agency for perhaps as long as 250 years. Vicarious liability under respondeat superior is "liability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) because of the relationship between the two parties."

> "Under the doctrine of respondeat superior, a master is subject to liability for the tortious acts of his or her servant." A

8

> prerequisite to vicarious liability under respondeat superior is the existence of a master/servant relationship.

Kerl v. Dennis Rasmussen, Inc., 273 Wis. 2d 106, 116-117 (2004) (citations omitted).

At this early stage, the plaintiff has alleged sufficient facts to allow him to proceed on a claim that Dr. Weiner was an employee—a "servant"—of Outreach. The court will allow him to pursue his malpractice/negligence claim against Outreach.

The court will not, however, allow the plaintiff to pursue a malpractice or negligence claim against Sue Chem, whom the plaintiff asserts was a secretary at Outreach. The plaintiff alleges only that defendant Chem told Dr. Weiner about the fact that the plaintiff couldn't get his prescription refilled at the pharmacy, asked the plaintiff to wait, then took him to see Dr. Weiner after about twenty minutes. He does not allege that defendant Chem was a nurse or a doctor. He does not allege that she had any reason to know what was in the pill bottle, whether the pills had side effects, or what those side effects might be. He does not allege that she gave him the pills, or decided to give him the pills. He does not allege that she had any part in the decision-making that resulted in his getting the bottle of pills from Dr. Weiner. The court will dismiss Sue Chem as a defendant.

C.  **Motions to Proceed Without Pre-Paying the Filing Fee**

The plaintiff has filed three motions asking the court to allow him to proceed without prepaying the filing fee. He filed the first request on October 5, with his complaint. Dkt. No. 2. He was, at that time, in custody. He did not

date or sign that request, although he did file a copy of his trust account statement for the period January 2016 through July 2016 (under the statute, he must file a statement for the six months prior to the date he filed his complaint—April to October). Dkt. No. 3.

Twelve days later, the plaintiff filed his second request. Dkt. No. 5. He was still in custody at that point, but this time, he signed and dated the request. Id. He filed his third motion after he'd been released from custody. Dkt. No. 9.

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. "Prisoner" status under the PLRA turns on whether the plaintiff was in custody when he filed the suit. Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 668 n.1 (7th Cir. 2012) (citing Witzke v. Femal, 376 F.3d 744, 750 (7th Cir. 2004).

The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. Id. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). The initial partial filing fee is 20% of the greater of the average monthly deposits to the prisoner's trust account or the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint. 28 U.S.C. §1915(b)(1). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

10

In this case, the six-month trust account report for January through July 2016 shows total deposits of $120.93 and total withdrawals of $120.92. Dkt. No. 3. By the court's calculation, the initial partial filing fee would be somewhere around $1.80-$2.50. Because the plaintiff now has been released from custody, the court will not require the plaintiff to pay the initial partial filing fee in order to move forward with his case. The court grant the plaintiff's second motion for leave to proceed without prepaying the filing fee (dkt. no. 5), and will order that the plaintiff shall pay the filing fee over time, as he is able. (The plaintiff suggests in his most recent motion that he pay the fee in installments of $10 per month starting in January 2017. The court believes that this is a good solution, and strongly urges the plaintiff to begin making these payments.)

III.     Conclusion

The court **DISMISSES** defendants the United States Government, the Department of Health and Human Services, and Sue Chem.

The court **DENIES** the plaintiff's unsigned motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's second motion for leave to proceed without prepaying the filing fee. Dkt. No. 5. The court **ORDERS** that the plaintiff shall pay the $350 balance of the filing fee as he is able. The plaintiff shall make his payments to the Clerk of Court for the Eastern District of Wisconsin, 517 East Wisconsin Avenue, Room 362, Milwaukee, WI 53202. He

shall clearly identify the payments by the case name and case number of this case.

The court **DENIES** the plaintiff's third motion to proceed without prepaying the filing fee as **MOOT**. Dkt. No. 9.

The court **ORDERS** that the U.S. Marshals Service shall serve a copy of the complaint, a waiver of service form and/or the summons, the magistrate judge consent/refusal form, and this order upon defendants Outreach Community Health Center and Dr. Michael Weiner, pursuant to Fed. R. Civ. P. 4. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making, or attempting to make, such service. 28 U.S.C. §1921. The full fee schedule appears at 28 C.F.R. §0.114(a)(2)-(3). Even though Congress requires the court to order the U.S. Marshals Service to provide service when it allows a person to proceed *in forma pauperis*, Congress has not allowed either the court or the U.S. Marshals Service to waive these fees.

The court further **ORDERS** that the defendants shall answer or otherwise respond to the complaint within the time frame prescribed by the Federal Rules of Civil Procedure.

Dated in Milwaukee, Wisconsin this 27th day of December, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge

12

Case 2:16-cv-01335-PP   Filed 12/27/16   Page 12 of 12   Document 10